W. S. MCAULEY ET AL. V. J. H. COOLEY.

FILED FEBRUARY 18, 1896.   No. 5305.

1. **Partnership: DISSOLUTION: ACTION AT LAW BETWEEN PART-NERS.** The decision in relation to certain questions in this case, which were announced in a former opinion, for a report of which see 45 Neb., 582, herein reaffirmed, and having been stated in the syllabus, will not be here restated.

2. **Principal and Surety.** Parties who signed the bond of one of the members of a copartnership, conditioned for the due and faithful performance of his duties, in and concerning the business in which the firm engaged, *held*, not released from their obligation thus assumed, by an increase in the amount of the capital invested in the business.

REHEARING of case reported in 45 Neb., 582.

*Capps & Stevens, John M. Ragan*, and *J. B. Cessna*, for plaintiffs in error.

References as to non-liability of sureties: *Miller v. Stewart*, 9 Wheat. [U. S.], 680; *Grant v. Smith*, 46 N. Y., 95; *Walrath v. Thompson*, 6 Hill [N. Y.],

540; *Dobbin v. Bradlcy*, 17 Wend. [N. Y.], 422; *Bonser v. Cox*, 4 Beav. [Eng.], 379; *Zimmerman v. Judah*, 13 Ind., 286; *Judah v. Zimmerman*, 22 Ind., 388; *Lee v. Dick*, 10 Pet. [U. S.], 482; *Edmondston v. Drake*, 5 Pet. [U. S.], 624; *Osborne v. Van Houten*, 8 N. W. Rep. [Mich.], 77; *Woodworth v. Anderson*, 19 N. W. Rep. [Ia.], 296; *Sage v. Strong*, 40 Wis., 575; *Henderson v. Marvin*, 31 Barb. [N. Y.], 297; *Farmers & Mechanics Bank v. Evans*, 4 Barb. [N. Y.], 487; *Lang v. Pike*, 27 O. St., 498; *Wassenick v. Ireland*, 9 S. W. Rep. [Tex.], 203.

*B. F. Smith, contra.*

HARRISON, J.

In October, 1888, J. H. Cooley and George A. Bentley formed a copartnership, and under the firm name and style of J. H. Cooley & Co. engaged in the business of dealing in lumber and coal in the town of Holstein, this state. The firm continued its operations until on or about July 31, 1889, when it was dissolved. The written agreement or contract for the formation of the partnership, and to govern in conducting its affairs, was, in part, as follows:

"Articles of agreement, made and entered into this 12th day of October, 1888, by and between J. H. Cooley, of Kenesaw, and G. A. Bentley, of Holstein, Nebraska, as follows:

"The said parties above named have agreed to become copartners in business and by these presents do agree to be copartners together under the firm name of J. H. Cooley & Co. in buying, selling, and vending of lumber, lath, shingles, coal, and other business of like nature, and to that end the said J. H. Cooley shall contribute a stock of lum-

ber, lath, shingles, coal, real estate, and improve-
ments, etc., for which the whole investment shall
not exceed three thousand ($3,000) dollars, and is
not required to do any more work than he shall
elect, and the said G. A. Bentley shall, and he is
hereby firmly bound to give all his time and use
his best efforts to promote the interests of this
business.

"The said G. A. Bentley is to keep the books of
the firm in a careful and workmanlike manner,
and to render a just, true, and accurate account
of all goods, wares, commodities, merchandise,
moneys, and accounts at any time required, and to
do all the work required to be done in the business
as long as one man can do it, after which the
expense of hiring a man shall be borne equally
out of the business, and G. A. Bentley be allowed
to draw his personal expenses, not to exceed the
sum of forty ($40) dollars, which amount shall be
charged to his personal account and come out of
his share of the profits."

W. S. McAuley and Charles H. Furer signed a
bond with George A. Bentley as principal, by
which they obligated themselves as follows:

"Whereas, on the 12th day of October, 1888, the
above named G. A. Bentley and the said J. H.
Cooley entered into a copartnership for the pur-
pose of carrying on business of lumber, coal, etc.,
in the village of Holstein, in the county of Adams,
in the state of Nebraska:

"Therefore the condition of this obligation is
such that if the above named G. A. Bentley shall
do and perform all the acts of the written contract
entered into by and between the said parties of
the above date, and shall carry out the obligations
therein required of him strictly according to its

spirit and terms, then these obligations to be void, otherwise to remain in full force and effect."

The present action was instituted by J. H. Cooley against the plaintiffs in error upon the bond which they had signed, the object being to recover the aggregate amount of sums which it was claimed had been paid to Bentley, and of which he had made no entry in the books of the firm, and for which he had failed to account. Defendant in error was successful in the district court, and to reverse the judgment there rendered in his favor the parties sureties on the bond presented the case to this court by petition in error. On hearing in this court the judgment of the trial court was affirmed. (For report of the decision then announced see 45 Neb., 582.) A motion for a rehearing was filed, which was sustained, and the cause has been reargued and again submitted for our consideration and adjudication.

The conclusion of the former decision in relation to the dissolution of the firm and accounting or settlement of its affairs between the partners, and the right of defendant in error to maintain an action at law, were not attacked at the present hearing, and, without discussion or further notice now, they will be adopted and reaffirmed.

The argument of counsel for plaintiffs in error on rehearing was an effort to maintain the proposition advanced by them that there had been such a modification of the contract of partnership by the parties to it as released the sureties on the bond which was executed with reference to and reliance upon such contract, and its performance in strict accordance with its terms. The facts in respect to the modification or change which it is claimed was made in the agreement are as fol-

lows: It was stated in the contract that "J. H. Cooley shall contribute a stock of lumber, lath, shingles, coal, real estate, and improvements, for which the whole investment shall not exceed three thousand dollars;" and he put into the business, property and money to the amount of, in round numbers, $5,000. It is urged on behalf of the plaintiffs in error that, inasmuch as the obligation of their bond was that Bentley should "do and perform all the acts required of him by the written contract, and carry out the obligations therein required of him strictly according to its spirit and terms," that the terms of the contract became of the substance of the bond, and if it was changed in any material particular without the consent of the sureties, it effected their release; that the change in the amount invested by Cooley was a material one; that thereby greater opportunity was afforded the principal in the bond to commit the alleged acts by which it is claimed the damages sought to be recovered in this suit were occasioned; that the sureties may have thought that Bentley could successfully manage a business in which was invested $3,000 and were willing to become responsible for his acts in and concerning such a business and not one in which there was to be handled a larger amount. They state that the theory upon which their argument is based is that the articles of copartnership and the bond must be construed together as one instrument in determining the liability assumed by the parties who signed the bond. The rule of law relied upon by counsel for plaintiffs in error, as stated in their briefs, is that in determining the liability of a surety it must be borne in mind that he is a favorite of the law, and

has a right to stand upon the strict terms of his contract, when such terms are ascertained. A surety is bound for the due performance by his principal of the precise contract to which the guaranty referred, and if that contract has been changed or modified, without the consent of the surety, he is discharged. This is an established doctrine, and variously worded it has been applied by the courts, both federal and state. It has been recognized and applied in this state. (See *Curtin v. Atkinson*, 36 Neb., 110; *Crane v. Specht*, 39 Neb., 125.) Accepting and proceeding according to the theory advanced for plaintiffs in error in respect to construing the bond and contract in this case as one instrument, there must, conjointly with the rule of law quoted in regard to sureties and applicable to their obligation, be applied one which is here equally as forcible and proper. Another rule, equally binding upon the courts, is that in the construction of a contract of a surety, as well as of every other contract, the question is, what was the intention of the parties as disclosed by the instrument, read in the light of the surrounding and attendant facts and circumstances? (1 Brandt, Suretyship & Guaranty, sec. 80; *Lionberger v. Krieger*, 4 West. Rep. [Mo.], 431.) The bond and contract involved in this action, when considered together, and viewed in the light of the facts and circumstances surrounding and attendant upon their inception and existence, when fairly and reasonably construed, seem to indicate that the limit placed by the terms of the contract of partnership upon the amount of capital to be at its beginning invested by Cooley was for his benefit and might be waived by him in favor of a larger sum if he so desired. That it was in direct

contemplation of the parties that the business might grow and increase in volume, and necessarily in the capital to sustain it in its larger workings, appeared in and was directly provided for in the contract, wherein it is stated that Bentley was to do "all the work required to be done in the business, as long as one man can do it, after which the expense of hiring a man shall be borne equally out of the business," and certainly it must have been clear to and within the expectation of all the parties to both contract and bond that if the business was successful the principal in the bond would have the management and handling of a capital considerably more than $3,000 during the times when the profits remained for longer or shorter periods mingled with the other funds in the business. The increase in the investment may have rendered the duties devolving upon Bentley, the principal in the bond, to some extent more arduous and laborious, but it did not effect any change in the character or nature of the acts to be performed by him, and for the due performance of which the sureties were bound. The acts he was obliged to do were the same. The province of his duties was not changed, though the subject-matter was increased, which was possible at all times by additions of profits, and for the damages which accrued through the failure of the principal in the bond to perform acts included and covered by the obligations of the bond, the sureties were and remained bound. (*Eastern R. Co. v. Loring,* 138 Mass., 381; *Rollstone Nat. Bank v. Carleton,* 136 Mass., 226; *Bank of Wilmington v. Wollaston,* 3 Harring. [Del.], 90; *London, B. & S. C. R. Co. v. Goodwin,* 3 W. H. & G. [Eng.], 320; *Strawbridge v. Baltimore & O. R. Co.,* 14 Md., 360; *Gaussen v.*

*United States,* 97 U. S., 584; *Exeter Bank v. Rogers,* 7 N. H., 21; *Lionberger v. Krieger,* 4 West. Rep. [Mo.], 431.) Whether the recovery could be for more than the $3,000 we are not called upon at this time to discuss and do not express any opinion, as the amount recovered was much less than that sum. The judgment of the district court is

AFFIRMED.

RAGAN, C., not sitting.