[No. 1389. December 8, 1911.]
TERRITORY OF NEW MEXICO, Appellee, v. MELVIN W. MILLS, Appellant.

SYLLABUS.

1. Only such assignments of error can be presented to the appellate court as were brought to the attention of the trial judge so as to permit of their correction by him.

2. A bond is a contract by specialty.

3. Where by bond the liability of sureties for a bank to the territorial treasurer for territorial funds on deposit in said bank, was limited to the sum of $10,000; whatever deposit was made by the treasurer above the amount to which the bank was entitled was made by him as an individual depositor upon his own responsibility, but such excessive deposit could not have been made with reference to the bond and could not affect the liability of the surety any more than a deposit made by another individual.

Territory v. Mills, 16 N. M. 555.

Appeal from the District Court for Santa Fe County, before JOHN R. MCFIE, Associate Justice. Affirmed.

JULIUS STAAB for Appellant.

Where a surety enters into a joint and several obligation with his principal, the obligee will be entitled to either a joint or several judgment at his election, but he cannot have both. U. S. v. Price, 9 How. 83; U. S. v. Cushman, 2 Summer 246; Sheehy v. Manderville, 6 Cranch 253; Sessions v. Johnson, 95 U. S. 347; U. S. v. Ames, 99 U. S. 35; King v. Hoare, 13 Mees & W. 494; Robertson v. Smith, 18 Johnson 459; Ward v. Johnson, 13 Mass. 148; Cowley v. Patch, 120 Mass. 137; Smith v. Black, 9 Serg. & R. 142; C. L. 1897, secs. 2894, 2895, 2942, 2946; Armentrout v. Smith et al, 43. S. E. 98; Snyder v. Snyder, 9 W. Va. 420; Beazley's Admr. v. Sims, 91 Va. 644; Gould v. Sternburg, 69 Ill. 531; Jansen v. Grimshaw, 125 Ill. 468; Davidson v. Bond, 12 Ill. 84; Faulk v. Kellums, 54 Ill. 188; Byers v. First Nat. Bank, 85 Ill. 423; Felsenthal v. Durand, 86 Ill. 230; Wilson v. Blakeslee et al, 16 Or. 43; Fisk v. Henaire, 14 Or. 29; Miller v. Bryden, 34 Mo. App. 602; Schweickhardt v. St. Louis, 2 Mo. App. 571; Eichelman v. Weiss, 7 Mo. App. 87; Clinton Bank v. Hart, 5 Ohio St. 33; Outcault v. Collier, 8 Okla. 477; McFarlane v. Tipp, 206 Pa. St. 321; Sawyer v. White, 19 Vt. 40; Mason v. Eldred, 6 Wall. 231; Oakley v. Aspinwall, 4 N. Y. 513; Russell v. McCall, 141 N. Y. 450.

The appellant was released from the bond because the territory by agreement with the bank, principal on the obligation, deposited larger sums with the bank than the bond called for. Ryan v. Trustees, 14 Ill. 20; Reese v. U. S., 9 Wall. 13; U. S. v. Corwine, 25 Fed. Cases 14, 871; U. S. v. Freed, 186 U. S. 309; Evans v. Gradon, 28 S. W. 439.

FRANK W. CLANCY, Attorney General, for Appellee.

The bond sued on was not merged in the judgment first taken, so as to prevent further proceedings against

another surety. Territory v. Mills, 13 N. M. 174; C. L. 1897, secs. 2894, 2895, 2946, 2942; Chitty on Contracts 3, 8 Am. ed.; Bishop on Contracts, sec. 108; Bouvier's Law Dic., Title Contracts, par. 15.

Deposits in excess of the bond cannot operate to discharge the appellant. McAuléy v. Cooley, 45 Neb. 582, id. 47 Neb. 165; Taylor v. Standard Loan & Accident Ins. Co., 47 Neb. 673; Bartley v. Meserve, 36 L. R. A. 746; Clagett v. Salmon, 5 G. & J. 314; Bateman v. Mapel, 145 Cal. 241; Fertig v. Barles, 78 Fed. 866; Curtis v. Hubbard, 6 Metc. 186; Pratt v. Matthews, 24 Hun. 387, et seq.; Rouss v. Krauss, 126 N. C. 667; Fuqua v. Pabst Co., 36 S. W. 479; Minturn v. U. S., 106 U. S. 438; Ryan v Trustees, 14 Ill. 20; Reese v. U. S., 9 Wall. 13; U. S. v. Freed, 186 U. S. 309; U. S. v. Corwine, 25 Fed. Cas. 14, 871; Evans v. Gradon, 28 S. W. 439.

## STATEMENT OF THE CASE.

In 1903, the Taos County Bank, organized under the laws of the Territory of New Mexico, made application to become a depository of territorial moneys to the amount of ten thousand dollars under section 5, chapter 61, of the laws of New Mexico of 1893, (Sec. 255, C. L. 1897) and gave its bond to the Territory in the sum of twenty thousand dollars with Juan Santistevan and Melvin W. Mills, the appellant herein, as sureties. On November 6, 1903, suit was instituted by the Territory on the bond against the principal and the sureties and judgment was prayed for the sum of $4304.86, together with interest from the 6th day of August, 1903. The bank and Juan Santistevan defaulted and a joint judgment was rendered on November 6, 1903, against them in the district court for the amount of $4367.92. The appellant Mills answered the complaint, and, after judgment against him in the district court, appealed to the supreme court and the judgment was reversed, (See 13 N. M. 174) and the cause was remanded to the District Court. Mills filed an amended answer setting up as his sole defense that the Territory of New Mexico, by its treasurer, deposited with the said bank a greater sum than $10,000, viz: the sum

of $10,020.00 and at another time that the territorial treasurer deposited with said bank the sum of ʋ10,089.52 without the consent or knowledge of the defendant, Melvin W. Mills, surety on said bond and obligation, whereby the risk and liability of the defendant was increased; alleging that thereby the defendant became discharged. A demurrer was interposed to this answer on two grounds; first, that the answer did not state facts which constituted a defense and, second, that the facts set forth in the answer did not increase the risk and liability of defendant Mills, which, by the terms of the bond sued on did not exceed the sum of $10,000. The demurrer was sustained by the district court and the defendant elected to stand upon the demurrer and judgment was rendered against him for the sum of $5834.26, from which judgment this appeal was taken.

## OPINION OF THE COURT.

ROBERTS, J.—The appellant has assigned thirteen grounds of error by which he attempts to present to this court two reasons for the reversal of the judgment; first, that the judgment rendered against the bank and Santistevan in 1893, on default, was a joint judgment and that by the election of the territory to obtain a joint judgment against the principal and one of the sureties it lost its right to proceed against the appellant. Second, that the appellant was released from liability because the Territory deposited larger sums with the bank than the bond indemnified, without the knowledge and consent of the surety.

1. The effect of the rendition by the district court of the joint judgment against the bank and Santistevan is not properly before this court for review. The point was never raised in the court below. No plea in abatement was filed, nor does the matter appear to have been in any way called to the attention of the court. This court has frequently held that only such assignments of error can be presented to the appellate court as were brought to the attention of the trial judge so as to permit of their correction by him, and there is a

statutory provision also, which provides: "No exceptions shall be taken in an appeal to any proceeding in the district court, except such as shall have been expressly decided in that court." See Crabtree v. Segrist, 3 N. M. 500; Chaves v. Lucero, 13 N. M. 368. But, were the matter properly before the court, we do not believe that it would avail the appellant. Section 2942 of the Compiled Laws of 1897, is as follows: "Where two or more persons are bound by contract or by judgment, decree or statute, whether jointly only, or jointly or severally, or severally only, and including the parties to negotiable paper, common orders and checks, and sureties on the same, or separate instruments, or by any liability growing out of the same, the action thereon may, at the option of the plaintiff, be brought against any or all of them; when any of these so bound are dead, the action may be brought against any or all of the survivors with any or all of the representatives of the decedents, or against any or all such representatives. An action or judgment against any one or more of several parties jointly bound, shall not be a bar to proceedings against the others." By the last sentence it will be noted that a judgment against one of several parties jointly bound shall be no bar to proceedings against the others, and it has been the uniform practice in this Territory since this statute was adopted, in 1880, to take judgment against one or more of such parties and to have further proceedings in the same action to obtain judgment against the others. No injustice can result from this practice, as the plaintiff cannot obtain satisfaction upon more than one of such judgments. Appellant attempts to get away from the effect of this statute by insisting that in the statute the word "contracts" does not mean such a thing as a bond. A bond is a contract by specialty and is so recognized by every writer on contracts. (Chitty on Contracts 3, 8 Am. ed.; Bishop on Contracts, sec. 108; Bouvier's Law Dic. Title Contracts, par. 15.)

2. This brings us to a consideration of the only defense interposed by the appellant, and the only matter properly before the court for consideration. The record

discloses that at one time there was a deposit of $20 in excess of $10,000, and at another time a deposit of $89.52 in excess of that sum.   There is nothing in the condition of the bond sued on which limits the territorial treasurer so that he could not make deposits in the bank other than the $10,000.   We can not see how it concerns the surety that he made such deposits.   By the bond the liability of the sureties was limited to the sum of $10,000 and no attempt is being made on the part of the Territory to hold them for any larger sum.   Whatever deposit was made by the treasurer above the amount to which the bank was entitled under the law, was made by him as an individual depositor upon his own responsibility for which, in case of loss, he would be liable under his official bond, but such excessive deposit could not have been made with reference to the bond now sued on and could not affect the liability of the surety any more than a deposit made by another individual.   This position not only commends itself as a matter of reason, but is well supported by authorities.   In Nebraska, the state treasurer, in pursuance of a statute similar to ours, deposited money in banks designated as state depositories, the statute prescribing the conditions which the bond should contain and setting out the form of the bond, at the end of which followed a provision that the treasurer should not have on deposit in any bank at any time more than one-half of the amount of the bond given by the bank.   This provision must be considered as embodied in the bond and a part of it just as much as if it had been set out therein.   It appears that the treasurer made deposits in excess of the fifty per cent. penalty of the bond and one of the questions considered by the court was as to whether such deposits operated to release the principals, or sureties, as to the fifty per cent. which was deposited.   The court speaks as follows: "Is the bond of a state depository invalidated by the depositing of a sum of money therein by the state treasurer in excess of 50 per cent. of the amount of the penalty of the bond given by the bank?   Neither in the briefs nor upon oral arguments at the bar was this question discussed by counsel, and therefore, according to pre-

cedents, the court might ignore it, notwithstanding it is raised by the record; but we shall not do so. The principle which should control our decision upon this feature of the case has already been recognized and applied by the court in McAuley v. Cooley, 45 Neb. 582, id., 47 Neb. 165. It is disclosed by that case that J. H. Cooley and George A. Bently formed a trading copartnership. By the terms of the articles, the total amount of capital was limited to $3,000, and said Bently was to have charge of and manage the business. W. S. McAuley and Charles H. Furrer executed a bond with Bently conditioned for the due and faithful performance by the latter in and concerning the business in which the firm was engaged. After the giving of the bond, the capital was increased to $5,000. In an action on the bond, it was held that the sureties thereon were no released from their obligation by such increase in the amount of capital invested. It requires no argument to show the application of that decision to the facts under consideration. The depository law has fixed the maximum sum which the treasurer shall have on deposit in any bank at the same time at one half of the amount of the bond executed by the bank. This is a limitation, not only upon the power of the treasurer to deposit, but restricts the bank from demanding a larger sum than one-half of the penal sum named in the bond. Were it not for this limitation, unquestionably a depository bank and the sureties upon its bond would be liable in case of a breach of its conditions, to the extent of the full penalty written in the bond. If the treasurer exceeds his duty by depositing a larger sum in a depository bank than he is authorized by law to do, it does not affect the liability of such bank and the sureties on its bond to repay to the state the sum deposited therein, in strict conformity to the requirements of the depository law, and the accretions thereof. See Taylor v. Standard L. & Acci. Ins. Co., 47 Neb. 673." Bartley v. Meserve, 36 L. R. A. 746, 750; 51 Neb. 116. In Maryland, several persons united in a mortgage reciting that one of the parties had begun the business of a merchant, and that the mortgagee had agreed to give him credit to the amount of $10,000.

and provided for indemnifying the mortgagee for all advances which he should make, not to exceed at any one time the sum of $10,000. The credit given was allowed to run beyond the $10,000 and the sureties made exactly the same defense which is sought to be set up here, but the court refused to sustain it. Clagett v. Salmon, 5 G. & J. 314, 328-9. In California, a surety company became surety on the bond of a contractor, given for the due performance of a contract, and when sued set up as a defense that the owner had paid to the contractor a large sum of money in excess of what was called for by the terms of the contract, and the trial court took the view that this was an impairment of the surety's rights, and that the surety was thus exonerated. It will be seen that the principle involved was like that upon which appellant relies in this case. Upon appeal, however, the supreme court said that this was immaterial and inconclusive; that if the payments were within the terms of the contract the sureties could not be heard to complain, and if they were not, then they were merely advancements of money entirely without the terms of the contract, and that the surety had no grievance, unless in some substantial way his condition was changed or a new liability sought to be imposed upon him because of such payments. Bateman v. Mapel, 145 Cal. 241, 243-4. In a federal court in New Jersey, suit was brought upon a bond, in which, as a final condition, it was covenanted that a credit should be given to the principals of $5,000, and that at no time should the amount due by them exceed the amount of the bond. Contention was made that by permitting the amount to be exceeded, the sureties were released, but the court held otherwise. Fertig v. Barles, 78 Fed. 866. In an early Massachusetts case, it appears that a surety guaranteed the payment of all sums which another person might owe a merchant for goods sold, provided that the whole amount which he should owe at any one time should not exceed $1,100, and later, added a further guarantee for the additional sum of $900.00, on the same conditions as expressed in the first obligation. The indebtedness was allowed to increase to nearly $2,700, and action being

Shoucair v. Insurance Co., 16 N. M. 563.

brought, the defense was set up that the surety was re-
leased because the limit had been exceeded, but the court
held against this contention.   Curtis v. Hubbard, 6 Metc.
186, 191-2.   In New York, the defendants executed a
writing in which they agreed with a firm of wholesale
dealers in coal that a retail dealer who purchased coal
from the firm should pay any indebtedness to the firm
up to the date fixed, and in default of his so doing
agreed to pay the same, "provided the amount so in de-
fault shall not at any time exceed  the sum of $1,000."
The arrangement was that the retail dealer should pay in
cash on or before the tenth day of each month, and it
appears that on the tenth day of four different months
he owed more than the guaranteed amount of $1,000, the
largest monthly balance being over $1,500.   The surety
contended that because the amount in default had been
allowed to exceed the $1,000 he was released, but the
court held against his contention.   Pratt v. Mathews, 24
Hun. 387, et seq.   See, also, Rouss v. Krauss, 126 N. C.
667; Fuqua v. Pabst Co., 36 S. W. 479; Minturn v. United
States, 106 U. S. 438.   From the above it follows that
the court committed no error in sustaining the demurrer
to appellant's answer, and the judgment of the lower
court is affirmed.