REQUESTED BY: Fred A. Herrington, State Tax Commissioner, Nebraska Department of Revenue.
1. Whether the Nebraska severance tax on oil and natural gas resources applies to the production of such resources applies to the production of such resources from government lands or Indian lands located within a Nebraska Indian reservation?
2. How should the deduction from the royalty owners' payment, in the amount of the royalty owners' share of the severance tax, be treated with regard to such production?
1. The tax applies to the private lessees' share of such production, but does not apply to the share of such production reserved as a royalty interest for the governmental or Indian lessors of the property upon which the oil and natural gas was produced.
2. The private lessee should pay the tax only upon his own share of the oil and natural gas produced, and should then pay the royalty interest in full, with no deduction for taxes on that portion of the oil and natural gas removed, to the government or Indian lessors who are exempt from taxation upon their share.
The Nebraska severance tax on oil and natural gas resources under Neb.Rev.Stat. §§ 57-701 through 57-715 (Reissue 1978), would appear to be an excise or occupation tax on the production or removal of oil and natural gas from land within the State of Nebraska. Such severance or production taxes, while containing variations in phraseology, are directed generally against the severance of resources from the soil, are measured against the value of the products severed, and are usually treated as excise taxes rather than property taxes. 71 Am.Jur.2d State and Local Taxation, 614, 57 Am.Jur.2d Licenses and Permits, § 1. An argument could be raised that the tax is actually a property tax on the oil and gas removed, as opposed to a tax based on the act of severing these resources, however, the tax has always been treated by those persons charged with its administration as an excise tax, and an administrative interpretation of long standing is entitled to great weight in Nebraska in interpreting a statute's meaning. Mogis v.Lyman-Richey Sand and Gravel Corp., 189 Fed.2d 130 (Neb. 1957).
Nebraska Revised Statutes § 57-702 (Reissue 1978) provides that the tax must be paid by the `person engaged in the severing of such oil and natural gas.' Neb.Rev.Stat. 57-708
(Reissue 1978), further provides that the person remitting the taxes to the tax commissioner `shall deduct, from the amount due the persons owning an interest in the oil or gas or in the proceeds thereof at the time of the severance, the proportionate amount of such taxes before making payment to such persons.' This is not a deduction from the tax itself, but rather a deduction from the royalty or other interest payment in the proportionate amount of taxes paid by the actual producer on that share of the oil or natural gas. Before going any further, it is necessary to address the question of where the actual tax liability falls. An argument could be made that under § 57-702, only the actual producer engaged in severing the resources is liable for the tax.
This approach would make explanation of the payment deduction under § 57-708 difficult, and in addition, as will be discussed herein, raises constitutional questions of uniformity in the application of the tax to those situations where such deductions might not be otherwise allowed.
When these statutes are construed in context, the impact of the total scheme appears to be that the tax is to be borne ratably by all persons with an interest in such production, including the lessor who retains a royalty interest, as well as the lessee who is engaged in the actual severance operations. Under this interpretation, the lessee producer is in essence merely an agent of the state in regard to the collection of the ratable share of taxes from the other interest holders for payment to the state. This is precisely how similar statutes have been interpreted in other states, thus placing the actual tax burden or liability proportionately on all interest holders. Barwise v.Sheppard, 299 U.S. 33 (1936); Group No. 1 Oil Corporationv. Sheppard, 89 S.W.2d 1021 (Texas Civil Appeals 1935). These cases also indicated that a lessor and royalty interest owner could be considered a participant in the joint venture of severing the resources and hence also a person engaged in the act of production or severing such resources from the land for purposes of the statute imposing a severance tax.
The court in Group I Oil Corporation v. Sheppard,supra, noted that not only is such a construction supported by the language of the act, but it is required to save it from the vice of unconstitutionality. The rationale is that a producer of oil on state university lands, where a deduction for taxes paid could not be made from the payment to the royalty interest owner, should not have a greater or unequal tax burden than a producer of oil on private lands who could deduct the ratable share of taxes paid from the royalty interest owners' share of the production. This is precisely the situation in Nebraska, where under Neb.Rev.Stat. § 72-903 (Reissue 1976), royalty interest payments must be made in full by lessees of state school lands with no allowance for any of the lessee's costs. This statutory provision, was of course, not altered by the Legislature when the Nebraska oil and natural gas severance tax was enacted. Thus, by construing this tax to apply ratably to all interest holders of the oil and natural gas produced, the constitutional rule that all privilege or franchise taxes must operate equally and uniformly upon all members of the class to be valid, is satisfied. Continental Insurance Companyv. Smrha, 131 Neb. 791, 270 N.W. 122 (1936).
It seems rather well established that a lessee and producer of oil and natural gas or other minerals on Federal government or Indian lands is not exempt from taxation either in the form of a property tax on the minerals themselves, or a production tax based on the act of severing such minerals from the land. Private individuals and lessees, with a right to mine and remove minerals, are not instrumentalities of the Federal government so as to prohibit their taxation. Oklahoma Tax Commission v. TexasCounty, 336 U.S. 242 (1948), Indian Territory IlluminatingOil Company v. Board of Equalization, 288 U.S. 325 (1932). The royalty owners' share or other retained interest of the Federal government or reservation Indians as lessors is, however, exempt from any such taxation, since it would be a violation of the basic principle of inter-governmental immunity from taxation. 71 Am.Jur.2d State and Local Taxation §§ 221 and 225. This principle of inter-governmental tax immunity was recognized by the Nebraska Supreme Court inWestern Union Telegraph Company v. Village of Wakefield,69 Neb. 272, 95 N.W. 659 (1903), as it applied to taxation of the operations of the United States Government, and inDroll v. Furnas County, 108 Neb. 85, 187 N.W. 876 (1922), as it applied to the taxation of proceeds from the lease of Indian lands. Thus, while the royalty interest share of production from lands leased from the Federal government or reservation Indians may not be taxed under the Nebraska severance tax, the share of the private lessees is taxable.
The same rationale applies to lessees of state owned lands, in that their share is likewise taxable. While there is a difference of authority on this issue, 71 Am.Jur.2d State and Local Taxation § 338, it does seem that in the application of this particular tax, the royalty interest share of the state government or its political subdivisions would not be subject to the tax. There are no specific exemptions as such contained in the wording of the statute, however, as in the case of Federal government and Indian lands, other overriding principles of law are applicable. In this particular case, because the tax is an excise tax and not a property tax, the exemption provisions contained in Article8, section 2 of the Nebraska Constitution are not applicable.State v. Cheyenne County, 127 Neb. 619, 256 N.W. 67
(1934). Nevertheless, the Nebraska courts have appeared to rely on similar principles of governmental immunity from taxation to those which are applicable to the Federal government, particularly in instances where the Legislature has given no overt indication in the statutes that their intent was to tax the state or its political subdivisions.
In Droll v. Furnas County, supra, the court noted that:
 "The general rule is that public property and the various instrumentalities of government are not subject to taxation. This immunity rests upon the most fundamental principles of government; being necessary in order that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself."
Id. at 90. And in Consumers Public Power District v.City of Lincoln, 168 Neb. 183, 95 N.W.2d 357 (1959), the court further stated that:
 "The general rule is: `Although there is authority to the contrary, as a general rule taxes may not be imposed by a state on its own governmental agencies or instrumentalities, or on those of its municipal corporations, nor may taxes be imposed by a municipality on the agencies or instrumentalities of a state, unless a statute specifically renders them subject to tax.'"
Id. at 186. See also, Allied Contractors, Inc. v. Boardof Equalization, 113 Neb. 627, 204 N.W. 374 (1925), and 84C.J.S. Taxation § 213.
In particular, the Consumers Public Power case involved an excise tax, so it is clear that the court was not relying upon the constitutional provisions against taxation of property of the state or its subdivisions. The earlier cases involved attempted taxation of government securities which were held to be instrumentalities of government rather than property. The logic used by the court in Droll, is particularly applicable in this case as it applies to such leases for the production of oil and natural gas on state school lands. The severance tax becomes part of the permanent school fund, thus, if we were to apply the tax to the state's royalty share of oil and natural gas produced on school lands, we would have the totally unnecessary situation of the state taxing itself in order to raise money for itself. The state may, of course, tax its own subdivisions with an excise tax, but as in State v. Cheyenne County,supra, the intent of Legislature to do so must be clear from the wording of the statute. As it appears in this situation, the Legislature has made no specific indication of its intention to tax state or governmental subdivisions in the application of the severance tax, and the above rules annunciated by the Supreme Court of Nebraska should therefore be applied to the effect that the state is presumed not to tax itself or its own subdivisions. Thus, the state's or any political subdivision's share of oil and gas produced should not be subject to the severance tax.
The question remains as to how the deduction under 57-708
should be applied in situations involving lessees of governmental or Indian reservation lands. Since the taxes are applied proportionately to each interest, and the royalty interest retained by the government or reservation Indians, is exempt from that tax, the private lessee will only remit that portion of the tax based upon his share of the oil and natural gas removed. In the case of state school lands, this would mean that a lessee would pay his share of the tax based on 7/8 of the value of the total oil and gas removed, the 1/8 share of the state being exempt from such taxation. Consequently, since there was no tax on the governmental or Indian share of the oil or natural gas, the private lessee would not be able to make a deduction for this share of the tax under the provisions of § 57-708 when he makes the royalty interest amount to such lessor. In essence, the deduction under § 57-708 is inapplicable in these situations.